**In re GHR ENERGY CORP., f/k/a Good Hope Refineries, Inc., Debtor.**

**523 NORTH BELT ASSOCIATES, Plaintiff,**

v.

**GHR ENERGY CORP., Defendant.**

**Bankruptcy No. 84–03474–H1–5. Adv. No. 84–0661–H1.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Oct. 16, 1986.

See also, 60 B.R. 52; 62 B.R. 226.

Butler & Binion, James R. O'Donnell, Houston, Tex., for plaintiff, 523 North Belt Associates.

Liddell, Sapp & Zivley, Eric J. Taube, Austin, Tex., for defendant, GHR.

EDWARD J. RYAN, Bankruptcy Judge.

On January 26, 1983, GHR Energy Corporation ("GHR") filed its chapter 11 petition in the United States Bankruptcy Court for the District of Massachusetts. The chapter 11 case was subsequently transferred to this court.[1]

At the time the chapter 11 petition was filed, GHR, as lessee, had signed certain lease agreements with 523 North Belt Associates ("North Belt")/plaintiff, as lessor, at 523 North Belt, Houston, Texas. Six of the leases were in effect at the commencement of the case and the remaining five leases commenced at various times during the pendency of this case. However, all eleven leases were signed and unexpired prior to the filing of the chapter 11 petition.

North Belt initiated this proceeding by filing a complaint on or about March 25, 1983 for relief from the stay or seeking, in the alternative, GHR's assumption or rejection of the leases. After the filing of North Belt's complaint, Judge Paul W. Glennon, United States Bankruptcy Judge for the District of Massachusetts, Worchester Division, issued a bench order on April 28, 1983 directing defendant to assume or reject the lease agreements on or before June 30, 1983.

The parties agreed to monthly extensions of the June 30, 1983 deadline until August 1, 1984. When GHR had admittedly failed to accept or reject the leases by the latter

1. On June 22, 1984, Judge Glennon signed an order at Worchester, Massachusetts, transferring venue of all proceedings in this case to United States Bankruptcy Court for the Southern District of Texas, Houston Division.

date, North Belt refused to grant an additional extension. By order dated January 15, 1985 this court refused to grant GHR's request for extension.

Despite this, GHR, while remaining in the offices and paying rent resumed negotiations with North Belt regarding modification of the lease agreements. However, these negotiations were unsuccessful.

On January 3, 1985, North Belt filed a motion for a determination, or alternatively, for a hearing regarding GHR's authority as debtor in possession to assume or reject its unexpired leases after a court imposed deadline had been set. Because this issue is unresolved, GHR's ability to reject is now before the court.

North Belt contends that GHR's failure to assume the unexpired lease agreements by August 1, 1984 does not constitute a presumptive rejection of the leases. Furthermore, North Belt argues that GHR has lost the privilege to assume or reject under section 365(d)(2) of the Bankruptcy Code through its failure to exercise its option to assume or reject by the August 1, 1984 deadline. Therefore, plaintiff maintains that the unexpired lease agreements pass on to GHR and remain in effect.

GHR contends that Judge Glennon's April 28, 1983 bench order directing defendant to assume or reject the lease agreements on or before June 30, 1983 only applies to the then operative leases. Furthermore, even if the court interprets Judge Glennon's order to cover all the leases, GHR urges that its failure to assume the leases by the court imposed deadline was to cause a rejection of those leases.

■ The court rejects North Belt's contention that the assumption of an unexpired lease can be accomplished by debtor not assuming or rejecting by the court set deadline. Likewise, the court rejects GHR's contention that the rejection of an unexpired lease can be accomplished by debtor not assuming or rejecting by the court imposed deadline.

Executory contracts and unexpired leases, such as we have here, are the subject of section 365 of the Bankruptcy Code. This section provides in part:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, *subject to the court's approval,* may assume or reject any executory contract or unexpired lease of the debtor.

(d)(2) In a case under chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease at any time before the confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(a), (d)(2) (1982) (emphasis added).

Prior to the 1984 amendments to the Code, which are not applicable to the case at bar, unexpired leases under chapter 7 were treated differently than in chapters 9, 11, and 13. The trustee in chapter 7 was allowed 60 days to either assume or reject the unexpired lease. If within the 60 days the trustee did not assume or reject the lease was deemed rejected. But, "for cause", the trustee could acquire additional time to reject or assume within the 60 days. The debtor in possession or trustee in a chapter 7, 11 or 13 could assume or reject an unexpired lease at any time prior to confirmation of the plan; however, a creditor could request that the court fix a deadline for assumption or rejection. *In re By-Rite Distributing, Inc.,* 47 B.R. 660, 663 (Bankr.D.Utah 1985), *rev'd,* 55 B.R. 740 (D.Utah 1985) (reversal applies to the interpretation of 11 U.S.C.A. § 365(d)(4) as amended by the 1984 amendments which is not applicable to the case at bar); *Sealy Uptown v. Kelly Lyn Franchise Co. (In re Kelly Lyn Franchise Co.),* 26 B.R. 441 446 (Bankr.M.D.Tenn.1983), *aff'd,* 33 B.R. 112 (M.D.Tenn.1983). *See also Gulf Petroleum, S.A. v. Marrero (In re Marrero),* 7 B.R. 586, 588 (Bankr.P.R.1980) ("as long as rejection is not ordered, the contract continues in existence").

The contrast between section 365 of the Code and its predecessor section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b) (1970) (1928), confirms this interpretation of the statute.

Section 70(b) of the Act provided that the "trustee shall assume or reject an executory contract" within a certain time, but made no mention of the necessity of court approval. Former Bankruptcy Rule 607 stated, however, that "[w]henever practicable, the trustee shall obtain approval of the court before he assumes a contract." The non-mandatory nature of the language of Rule 607 conflicted with the silence of section 70(b) and resulted in a split of authority as to whether the trustee's informal acts could constitute assumption or rejection of valuable assets of the estate.

The court in *Kelly Lyn Franchise Co.* rejected the debtor's argument (which was based primarily on Act cases) that the assumption of an unexpired lease can be accomplished by implication. The court found that although the Act provided for assumption or rejection, judicial approval was required before allowing assumption or rejection of unexpired leases.[2] Therefore, "assumption or rejection of an unexpired lease is devoid of validity without the court's approval." (*In re Marple Publishing Co., Inc.*), 20 B.R. 933, 935 (Bankr.E.D. Pa.1982). *See also In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462, 467 (Bankr.S.D.Cal.1982).

In spite of the clear language of section 365(a) set out above and the rationale behind it requiring court approval of the chapter 11 trustee's election to assume or reject unexpired leases, the doctrine of presumptive rejection appeared in a footnote in *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104 n. 1 (2d Cir.1982) without supporting authority. The Second Circuit in *Theatre Holding Corp.*, relying on the 60 day alternative rejection in chapter 7 cases, reasoned that "a chapter 11 debtor, whose deadline under § 365(d)(2) is set by

the court, should be presumed to have rejected the lease upon failure to meet the deadline." *Id.* However, the issue of whether the lease had been rejected was not directly before the court. Likewise, *In re Royal International*, 30 B.R. 750, 751–52 (Bankr.W.D.Ky.1983) followed suit by relying on footnote 1 of the *Theatre Holding Corp.* opinion to hold a chapter 11 debtor in possession, to have presumptively rejected its lease by failing to assume or reject within the court imposed deadline.

The theory of presumptive rejection ignores the code drafters' intention as expressed in a footnote in *Kelly Lyn Franchise Co.*:

> Congress did not enact § 365(d)(2) the way the Second Circuit reads that section. Section 365(d)(1) provides specifically for a "deemed rejection" in chapter 7 cases if the trustee fails to assume or reject within 60 days; but in chapter 11 cases, § 365(d)(2) does not provide for a "deemed rejection" if the debtor fails to meet a court-established deadline under that subsection. The presumption of automatic rejection adopted by the Second Circuit unnecessarily conflicts with the court approval requirement of § 365(a).... [T]he Second Circuit's position does not satisfy the court approval requirement of § 365(a) and does not protect the other parties in interest—the creditors who may be losing assets from the estate through a "deemed rejection" of which they have no knowledge. The Second Circuit analysis ignores the problem of notice and leaves open the possibility that a "deemed rejection" is the product of collusion, malfeasance by the debtor-in-possession, negligence, mistake or some other factor which would improperly penalize the creditors for the debtor's failure to act within a § 365(d)(2) deadline and then escape court review.

26 Bankr. at 447 n. 9.

The court *In re Ro-An Food Enterprises, Ltd.*, 41 B.R. 416 (Bankr.E.D.N.Y.1984)

---

**2.** *Id.* at 444. The decision in *Kelly Lyn Franchise Co.* made it clear that under the language of section 365(a) of the Code, court approval

was an explicit requirement before an unexpired lease could be assumed or rejected. *Id.* at 445.

reached a contrary result than that reached by *Kelly Lyn Franchise Co.* It concluded that an unexpired lease can be assumed by something less than a formal act of assumption. *Id.* at 418. The court stated that although less than formal acts of assumption do not remove the need for court approval, they do constitute notice and preclude deeming the lease rejected by inaction under section 365(d)(1). *Id.*

One recent case to address this subject is *In re Hodgson,* 54 B.R. 688 (Bankr.W.D. Wis.1985). The court in that case followed the reasoning of *Kelly Lyn Franchise Co.* It concluded that there must be either an express declaration of assumption or a motion for court approval pursuant to Bankruptcy Rule 6006.[3]

Upon consideration of the legislative history of section 365, the case law interpreting it and its purpose, this court concludes that GHR has neither assumed nor rejected the unexpired leases by failing to accept or reject by the court imposed deadline, or by implication or otherwise. Under section 365(a) and (d)(2) the debtor in possession has until the confirmation of the plan to either accept or reject. Although the plaintiff, North Belt, did request the court pursuant to section 365(d)(2) to set a deadline for assumption or rejection, the court never made a ruling stating if debtor fails to elect assumption or rejection by August 1, the leases will be deemed either assumed or rejected. The court merely set a deadline by which the election should take place and did not specifically state or make a ruling on what would occur if an election was not made by the deadline.[4]

The Code policy of maximizing the estate's value for the benefit of all creditors is furthered by the requirement of court approval. In the instant case, rejection will have an important bearing on the financial status of both the debtor and the landlord. Therefore, it is the responsibility of the court to examine all parties' interests and to approve or disapprove assumption or rejection under section 365(a).[5]

Despite the convoluted course these proceedings have taken, a thorough review of the stipulations, exhibits, briefs, arguments of parties and the entire record shows that after extensive negotiation efforts, which proved unsuccessful, debtor never assumed or rejected the leases by court approval or otherwise. Therefore, this court holds that according to section 365(a) and (d)(2) the debtor has until confirmation of the plan to assume or reject the then unexpired leases.[6]

Furthermore, this court interprets Judge Glennon's April 28 bench order, supra, to cover all leases whether effective or to become effective with passage of time. The court views all leases as enforceable contracts as of the date signed. All the leases were signed pre-petition and, therefore, are subject to Judge Glennon's April 28, 1983 bench order.

It is hereby ordered, adjudged and decreed that GHR has until confirmation of the plan under section 365(a) and (d)(2) to assume or reject all unexpired leases.

Let judgment enter accordingly.

---

3. 54 B.R. at 689–90. For a thorough analysis and discussion of the issue of assumption, *see In re By-Rite Distrib., Inc.,* 47 B.R. 660 (Bankr.D. Utah 1985), *rev'd,* 55 Bankr. 740 (D.Utah 1985).

4. In North Belt's January 3, 1984 motion for determination of ability of debtor to assume or reject, it requested a ruling on the issue of whether GHR could reject and in the event the court agreed with GHR, a hearing at which the court *would approve or disapprove* GHR's rejection of the lease agreements. The court as to this date has not had a hearing or made a ruling

approving or disapproving rejection or assumption.

5. 11 U.S.C. § 365(a) (1982). *See, e.g., Texas Importing Co., Ltd. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir.1966).

6. *See generally Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303 (5th Cir.1985) (under section 365, debtor cannot choose to accept the benefits and reject the burdens of the contract to the detriment of the party to the agreement).